———————o———————

## No. 3769.

(Court of Appeal, Parish of Orleans.)

R. PRITCHARD LESASSIER, vs. CALOGNE AND SARGENT, S. A. CALOGNE AND J. GORDON SARGENT, Individually and In Solido.

Questions of facts only are involved herein.

Appeal from Civil District Court, Division "B."

John Dymond Jr., for Plaintiff and Appellee.

J. Porter Parker, for Defendant and Appellant.

ESTOPINAL, J. Plaintiff avers that he entered into a verbal contract with the defendant wherein they obligated themselves to buy from him 1344 cubic yards of cinders which he could have delivered to them at a profit of 55 cents per cubic yard, and that

defendants refusal to carry out their contract with him has caused him damages in the sum of $672.00, for which he now sues.

The facts briefly stated, as we find them, are these: The contracting firm of Cook & Laurie, having secured the contract for the building of the Cold storage plant of the New Orleans Cold Storage and Warehouse Company, entered into a verbal contract with plaintiff, agreeing to buy from him all the cinders needed for the construction of certain portion of the plant, agreeing to pay plaintiff at the rate of $1.00 per cubic yard of cinders.

Subsequently Cook & Laurie, sub-let to the firm of Calogne & Sargent, defendants herein, the contract for that part of the work requiring the use of cinders, informing their sub-contractors that they (Cook & Laurie), had previously entered into a contract with the plaintiff for the cinders to be used in the construction, and had agreed to pay $1.00 per cubic yard for same, and advised defendants to take over that contract with plaintiff. Accordingly, Cook, acting for his firm, and Colonge for his, by appointment, met paintiff to discuss the subject matter of the cinders, at which interview Colonge agreed to buy cinders from Plaintiff at the contract price originally made with Cook & Laurie, to-wit: $1.00 per cubic yard.

Defendants deny their liability to plaintiff, claiming that no contract was perfected between them and plaintiff, admitting, however, there was a promise to buy, deferentiating between that and what, in their conception, consitutes a contract.

Our learned Brother of the District Court who enjoyed the advantage of seeing and hearing witnesses, concluded that a perfect and binding contract was made by the parties, and our examination of the testimony satisfies us that he has made no error.

Mr. Cook, of Cook & Laurie, testifies, touching this interview, as follows:

Q. What did you say, if anything, to Colonge & Sargent, and with which member of the firm did you have any talk?

A. Well, I had my talk with Mr. Calonge.

Q. Well, did you mention the fact that you had already accepted the Lesassier offer of the cinders?

A. Well, after Mr. Calonge came and made a bid on this work

I told him I had already bought the cinders and the sand from Mr. Lesassier. Then we got to talking, and he asked me what price, and I told him a dollar a yard for the cinders. Well, before I closed up this contract I called him and Lesassier together, that is the best of my recollection, it has been some time; and they agreed that they would assume my contract with Lesassier.

Q   Well, now, you say you had a talk with Mr. Calonge. Did you ever have a talk with Mr. Sargent?

A.   I don't recollect that I ever did.

Q.   Did Mr. Calonge express himself in any way in regard to this suggestion?

A.   Well, when he and Mr. Lesassier· came together. That is what I said before.

Q.   Was he satisfied, or was he not satisfied?

A.   Yes sir, is was satisfactory. That was the understanding.

*By The Court.*

Q.   Were you present at the interview?

A.   Yes sir.

Q.   Between Mr. Calonge and Mr. Lesassier?

A.   Yes, sir.

Q.   Can you tell what Mr. Lesassier said, and what Mr. Calonge said at that interview, the substance of the conversation?

A.   I have told you what was said.

In reply to a request by Counsel, the witness said: "Mr. Calonge agreed to accept my verbal contract that I had made with Mr. Lesassier with regard to cinders and sand. Of course, there was some little discussion in the matter, but finally it was agreed that Mr. Calonge would accept it.

Cook then testifies that he would not sub-let the contract to defendants if they had not agreed to take over his firm's verbal contract with Lesassier.

Lesassier, the plaintiff, testifies, as follows:

Q.   Mr. Lesassier, you have heard the testimony just given by Mr. Cook on the witness stand. Do you recall an occasion when Mr. Cook, Mr. Calonge and yourself had a conference in regard to the supplying of cinders to this warehouse company contract?

A.   I do.

Q.   What was that conversation, as you remember it?

A. Why, Mr. Cook, by appointment between Mr. Calonge, Mr. Cook and myself, we met at Mr. Cook's office, which was then on Baronne near St. Joseph street, right in the rear of the Aarons & Ott building, which he was just then building; and we three met there by appointment. Mr. Cook had previously told me that he had made arrangements with Messrs. Calonge & Sargent to do the concreting in the floor there, and to use the cinders and sand that he had contracted with me for, and we met and discussed the same thoroughly; we discussed it in all its phrases. I don't suppose there could be any doubt about the agreement at all, and Mr. Calonge, who represented Calonge & Sargent, at the meeting, assumed Mr. Cook's contract with me.

Q. Did you then proceed to deliver cinders?

A. I did.

It appears that a portion of the cinders furnished by plaintiff were rejected by the Superintendent in charge of the building, which fact is not unusual, we are informed in the record, whereupon defendants, notwithstanding the assurance by the plaintiff that he was both willing and able to deliver the cinders, demanded of him a written contract and a bond. To this plaintiff answered: "If you wanted a bond you should have asked me in the conversation at the time we three met at Mr. Cook's office."

Calonge then put the direct question to plainiff "Can you deliver me the cinders?" Plaintiff replying that he was ready to start the next day. He was met with the answer that he could not start until he had furnished a bond, to which paintiff demurred, saying that this was not in the agreement.

Mr. Cook, upon being recalled, was asked:

Q. Was there a general conversation, participated in between yourself, Mr. Calonge and Mr. Lesassier on this whole subject matter?

A. I said before there was a conversation; yes sir.

Q. Well, now, as a witness to that conversation, was the understanding completed at that time, or was there to be some subsequent arrangement made between Calonge and Sargent and Lesassier, in order to complete it?

A. I didn't undertsand it in that way.

Q. How did you understand it?

A. I understood that they settled the contract.

Q. And that was complete?

A. Yes sir.

The testimony given by Calonge is, in our appreciation, confirmatory of that of both Cook and the plaintiff, and their testimony certainly shows that every element necessary in a contract of sale, to-wit: The thing, the price, and the consent were present.

Calonge, one of the defendants, testifies as follows:

Q. Wasn't the fact of your taking over and buying your cinders from Lesassier, a subject of discussion at that time?

A. It came up at that time, yes sir.

Q. Didn't you again say that you would take the cinders from Mr. Lesassier at $1.00 a yard, or whatever it was?

A. A dollar a yard or load, I did.

Q. Then, if you agreed to that then, why do you dispute it now?

A. I don't dispute it now. I just told you I say so now. I would have bought the cinders from Mr. Lesassier at a dollar a load if * * * *

Q. Didn't close the agreement between you and Mr. Lesassier?

A. No sir, it did not.

Q. Did you mention any conditions at that time?

A. No sir, but Mr. Cook told me he would give me the contract for the Cold Storage at that time.

Q. If you made no conditions and you yourself admit you made no conditions at that time, what right have you to presume it was not a contract?

A. A promise to buy is not a contract.

This defendant makes a practical admission that there was a contract entered into between himself, representing his firm, and the plaintiff, but he calls it a promise to buy instead of a contract.

Plaintiff's contract with Cook & Laurie, was a verbal one, the defendants having knowledge of that fact, and the record shows that they entered into identically the same character of contract with the plaintiff.

66

The pretext adopted by defendants to the effect that they feared plaintiff would be unable to deliver either the quality or quantity of cinders required for their work is not tenable, for the reason, that witnesses testify that the plaintiff had the control of a large quantity of a good grade of cinders.

We think, from our study of the testimony, that defendant's true reason for breaking with plaintiff, was the discovery by them that they could get cinders at a cost somewhat less than they had agreed to pay plaintiff.

Their subsequent action in buying cinders from another person from whom they did not exact the furnishing of a bond, satifies us that plaintiff's refusal to furnish a bond was not the cause that brought about the rupture, but it is to be found in the fact that they bought cinders at 85 cts. instead of a dollar per cubic yard.

The most that can be said is, that defendants were unfortunate in not securing the very best terms possible, at the time they made the contract with plaintiff, but it would be trifling to concede their right to make a contract on certain terms and then to recede from that contract because, forsooth, they subsequently found that they could have made a better bargain.

The record shows that defendants used 948 cubic yards of cinders, on which plaintiff claims he would have made a profit of 55 cents per yard, and that he was damaged therefore to the extent of 55 cents per yard, or a total of $521.40, and not $672.00, as claimed in his petition.

We find that plaintiff secured cinders at a small cost, and that in some instances they were given to him by certain furnaces upon condition that he remove them. Therefore, the profit of 55 cents claimed on the contract with defendants is not unusual or exhorbitant.

The contract made by the defendants was practically independent of their written contract with Cook & Laurie.

The codal provision for the manner in which verbal contracts are to be proved has been observed in that, several witnesses have testified to the existence of a contract between the parties to this suit.

We find no error in the judgment of the lower court, and it is hereby affirmed.